UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
IN RE:                                              :
                                                    :
CENTRIC BRANDS INC.,                                :
                      Debtor.                       :     **OPINION AND ORDER**
--------------------------------------------------------------x
ALICIA ALLEN,                                       :     22 CV 2702 (VB)
                      Appellant,                    :
                                                    :
v.                                                  :
                                                    :
CENTRIC BRANDS INC.,                                :
                      Appellee.                     :
--------------------------------------------------------------x

Briccetti, J.:

Appellant Alicia Allen ("Allen"), proceeding pro se and in forma pauperis, appeals (the "Appeal") from the April 15, 2022, Memorandum of Decision and Order (the "Claims Order," BR-1070)[1] of the United States Bankruptcy Court for the Southern District of New York (Hon. Sean H. Lane, Judge) which reduced one claim and disallowed another claim filed by Allen in Centric Brands, Inc.'s ("Centric Brands") Chapter 11 bankruptcy proceeding.[2]

---

[1] "BR-__" refers to documents filed on the Bankruptcy Court docket, In re Centric Brands, Inc., No. 20-22637-SHL (Bankr. S.D.N.Y., filed May 18, 2020). "A-__" refers to the appendices submitted with Centric Brands's motion to dismiss. (See Docs. ##17-1–17-7).

[2] Based on the notice of appeal (Doc. #1), Allen technically appealed from the Memorandum of Decision dated March 25, 2022 (BR-1056 (the "Memorandum Decision")). However, the Memorandum Decision does not order any relief and cannot be appealed to this Court. See 28 U.S.C. § 158(a)(1). Instead, the Memorandum Decision explains the Bankruptcy Court's basis for reducing and disallowing Allen's claims and directs Centric Brands to submit a proposed order that would grant the intended relief. (Centric Brands contends the proposed order was not entered because, on the next business day, Allen filed her notice of appeal to this Court and moved for reconsideration of the Memorandum Decision.) Nevertheless, in light of appellant's pro se status, the Court construes the Appeal to appeal the Claims Order, which denied Allen's motion for reconsideration and ordered the reduction and disallowance of her claims.

1

Now pending is the Appeal (Doc. #14), and Centric Brands's motion to dismiss the Appeal. (Doc. #17).

For the reasons set forth below, Centric Brands's motion to dismiss the Appeal is GRANTED. The Appeal is dismissed as equitably moot.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 158(a).

## BACKGROUND

I.    <u>The Separation Agreement</u>

Allen separated from employment with Centric Brands on March 1, 2020. On February 18, 2020, she had signed a letter agreement memorializing the terms of her separation. (BR-816 at ECF 23 (the "Separation Agreement")).[3] Under the Separation Agreement, Centric Brands would pay Allen $25,047, representing twelve weeks of her base salary, to be paid on the same timeline as her normal salary for twelve weeks following termination, plus three months of reimbursement for COBRA payments (the "Severance Payment").

By signing the Separation Agreement, Allen released claims against Centric Brands "based on any event that has occurred before you sign this Separation Agreement, including all claims you have arising from or based upon your employment with [Centric Brands] and/or your separation from employment." (Separation Agreement ¶ 6(a)). The Separation Agreement explicitly released claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, Sections 503 and 504 of the Rehabilitation Act of 1973, the Family and Medical Leave Act, and "any other claim of discrimination, harassment, or retaliation in employment." (<u>Id</u>. ¶ 6(b)). The Separation Agreement carved out from the release "(i) your right to enforce this

---

[3] "ECF __" refers to page numbers automatically assigned by the court's Electronic Case Filing system.

2

Separation Agreement; (ii) your rights, if any, to unemployment or workers' compensation benefits; (iii) rights or claims which may arise after the Separation Date; or (iv) your right, if any, to receive any benefits vested under any employee benefit plan." (Id. ¶ 6(c)).

II. Allen's Proofs of Claim

On May 18, 2020, Centric Brands and its affiliates filed for Chapter 11 bankruptcy protection.

On July 2, 2020, Allen filed a proof of claim in Centric Brands's bankruptcy in the amount of $11,137.07 for "Contractual Balance of Unpaid Severance Payments." (A-1877 ("Claim No. 469")).

On August 5, 2020, Allen filed a second proof of claim, this time in the amount of $2,400,000 for "Forgone wages and other cost due to wrongful termination and injuries." (A-1886 ("Claim No. 1382"). Allen sought priority treatment for both claims.

On February 23, 2021, Centric Brands objected to Allen's claims seeking to (i) reduce Claim No. 469 to an unsecured priority claim of $5,330.35 based on payments already made to Allen under the Separation Agreement[4] and (ii) disallow and expunge Claim No. 1382 on the ground that Allen waived the right to assert claims for wrongful termination in the Separation Agreement. (A-1478–79). Allen opposed Centric Brands's objection to her claims, and on April 15, 2021, the Bankruptcy Court conducted a hearing on Centric Brands's objection.

---

[4] Centric Brands arrived at the $5,330.35 reduced claim amount by subtracting $19,716.65—the gross amount paid to Allen before the petition date—from the total $25,047.00 amount promised in the Separation Agreement. (A-1478). Centric Brands noted that $5,806.72, the amount by which it sought to reduce Claim No. 469, was withheld from the pre-petition payments to cover withholding taxes, social security, and other distributions consistent with the Separation Agreement. (A-1477). Centric Brands conceded that the remaining $5,330.35 to be paid under Claim No. 469 was entitled to priority treatment under the Bankruptcy Code. See 11 U.S.C. § 507(a)(4); (A-1478).

Based on Allen's arguments at the April 15 hearing, the Bankruptcy Court solicited supplemental briefing on whether the Separation Agreement was an enforceable contract. Subsequently, on October 13, 2021, the Bankruptcy Court conducted an evidentiary hearing on the enforceability of the Separation Agreement. Both parties presented documents and testimony during the evidentiary hearing, including live testimony from Allen.

On March 25, 2022, the Bankruptcy Court issued the Memorandum Decision explaining its reasons for granting Centric Brands's objection to Allen's claims. The Bankruptcy Court agreed with Centric Brands[5] that only $5,330.35 of Severance Payments remained unpaid. The Bankruptcy Court also determined Allen knowingly and voluntarily released the claims she purported to seek compensation for in Claim No. 1382 by executing the Separation Agreement. Thus, the Bankruptcy Court determined to reduce and allow Claim No. 469 in the amount of $5,330.35 and to disallow and expunge Claim No. 1382.

On March 26, 2022, Allen emailed the Bankruptcy Court raising substantive challenges to, and requesting modifications of, the Memorandum Decision. (A-1921).

Allen filed a notice of appeal with this Court on March 28, 2022. (Doc. #1). Allen did not seek a stay of execution of the Memorandum Decision (or any other Bankruptcy Court order) pending the Appeal.

On April 15, 2022, the Bankruptcy Court issued the Claims Order, which construed Allen's email as a motion for reconsideration of the Memorandum Decision, denied the motion for reconsideration, and formally granted Centric Brands's objections to Allen's claims. (A-1960). Allen did not seek a stay of the Claims Order pending the Appeal.

---

[5] In addition, "Ms. Allen did not challenge the Debtor's calculation of $5,330.35" as the amount of Severance Payments still owed. (Memorandum Decision at 3 n.2).

4

III.    Chapter 11 Plan Implementation

On September 21, 2020, the Bankruptcy Court entered an order confirming Centric Brands's Fifth Amended Joint Chapter 11 Plan of Reorganization (the "Plan").  (BR-657).  The Plan became effective on October 9, 2020.  Beginning on that date, pursuant to the Plan, Centric Brands would be reorganized as a private company and holders of interests in Centric Brands would exchange them for interests in the reorganized private company.  (A-0382).

On April 15, 2022, the Bankruptcy Court issued the Final Decree Closing the Reorganized Debtor's Chapter 11 Case Pursuant to Section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022 (the "Final Decree").  (BR-1071).  The Final Decree directed Centric Brands to reserve sufficient funds to pay the United States Trustee's fees, file an affidavit of final disbursements, and terminate the services of Centric Brands's claims and noticing agent, Prime Clerk, upon completing final distributions, including for allowed general unsecured claims.

On April 25, 2022, Centric Brands filed a Declaration of Disbursements indicating Centric Brands had paid its bankruptcy professionals, including its legal counsel and Prime Clerk.  (A-1975).

On May 13, 2022, Centric Brands filed a Notice of Distribution stating Centric Brands had "made its one and only distribution to Holders of Allowed General Unsecured Claims," the lowest priority claimants entitled to distributions under the Plan.  (A-1990; see also A-0376–80).  These distributions were made pro rata from a "Claims Cash Pool" of $5.8 million.  (See A-1990).

# DISCUSSION

I.    Standard of Review

A district court reviews a bankruptcy court's conclusions of law de novo and its findings of fact under a clearly erroneous standard.  See In re Ames Dep't Stores, Inc., 582 F.3d 422, 426 (2d Cir. 2009).[6]

With respect to a bankruptcy court's factual findings, clear error exists only when a reviewing court is "left with the definite and firm conviction that a mistake has been committed." In re Manville Forest Prods. Corp., 896 F.2d 1384, 1388 (2d Cir. 1990).  "[T]he standard of review for a mixed question all depends—on whether answering it entails primarily legal or factual work."  U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC, 138 S. Ct. 960, 967 (2018).

"Equitable mootness appeals arise in a somewhat different procedural posture:  in an equitable mootness dismissal, the district court is not reviewing the bankruptcy court at all, but exercising its own discretion in the first instance."  In re Charter Commc'ns, Inc., 691 F.3d 476, 483 (2d Cir. 2012).  "In so doing, the district court may rely on the bankruptcy court's factual findings, unless clearly erroneous, and if necessary receive additional evidence."  Id.  Whether an appeal is equitably moot is committed to the district court's discretion.  Id.

II.   Equitable Mootness

Centric Brands argues the Appeal should be dismissed as equitably moot because (i) the Plan has been entirely consummated and (ii) granting Allen relief would require unwinding significant distributions already made and Allen did not diligently seek a stay.

The Court agrees.

---

[6]    Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

A.     Legal Standard

Equitable mootness is a "prudential doctrine under which the district court may dismiss a bankruptcy appeal when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." In re Charter Commc'ns, Inc., 691 F.3d 476, 481 (2d Cir. 2012). "The primary purpose of equitable mootness is to give courts a tool to avoid disturbing a reorganization plan once implemented." In re Windstream Holdings, Inc., 838 F. App'x 634, 636 (2d Cir. 2021) (summary order).[7]

"[A]n appeal does not need to directly challenge a reorganization plan" for equitable mootness to apply. In re Windstream Holdings, Inc., 838 F. App'x at 637. For example, appeals from orders disallowing or expunging claims that, if allowed, would receive distributions under the plan may be dismissed on equitable mootness grounds. See, e.g., In re Pawlowski, 428 B.R. 545, 553 (E.D.N.Y. 2009).

In the Second Circuit, a bankruptcy "appeal is presumed equitably moot where the debtor's plan of reorganization has been substantially consummated." In re Charter Commc'ns, Inc., 691 F.3d at 482. "Substantial consummation" means:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2).

An appellant may overcome the presumption of mootness by establishing:

> (a) the court can still order some effective relief; (b) such relief will not affect the re-emergence of the debtor as a revitalized corporate entity; (c) such relief will not

---

[7] Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court; (d) the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and (e) the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

In re Chateaugay Corp. ("Chateaugay II"), 10 F.3d 944, 952–53 (2d Cir. 1993). Importantly, the appellant must satisfy all the Chateaugay II factors to avoid dismissal. In re Charter Commc'ns, Inc., 691 F.3d at 482.

"A chief consideration under Chateaugay II is whether the appellant sought a stay of confirmation." In re Metromedia Fiber Network, Inc., 416 F.3d 136, 144 (2d Cir. 2005). Indeed, "[i]n the absence of any request for a stay, the question is not solely whether we can provide relief without unraveling the plan, but also whether we should provide such relief in light of fairness concerns." In re Windstream Holdings, Inc., 838 F. App'x at 637. This recognizes "the important interest of finality that attaches once a reorganization plan is approved and consummated." Id.

A district court must afford a pro se appellant "special solicitude" and interpret her filings "to raise the strongest claims that [they] suggest[]." Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 489 (2d Cir. 2018). That said, a pro se appellant must still overcome the presumption that her appeal is equitably moot once a plan of reorganization has been substantially consummated. See, e.g., In re Frontier Commc'ns, Corp., 2021 WL 2333627, at *8 (S.D.N.Y. June 8, 2021); In re 60 91st St. Corp., 2022 WL 992813, at *3 (S.D.N.Y. Mar. 31, 2022).

B.    Analysis

Here, the Appeal is equitably moot.

8

First, the Plan has not only been substantially consummated, but entirely consummated. In this Circuit, courts routinely conclude a plan of reorganization has been substantially consummated when the effective date has passed and the trustee has begun "administering timely filed claims and making distributions to holders of allowed administrative and priority claims." In re BGI, Inc., 772 F.3d 102, 110 (2d Cir. 2014); see also In re Frontier Commc'ns Corp., 2021 WL 2333627, at *7 (pro se appeal presumed equitably moot when "[m]ost importantly, a significant portion (if not all) of the property transfer contemplated by the Reorganization Plan has already occurred"); In re 60 91st St. Corp., 2022 WL 992813, at **1, 3 (pro se appeal presumed equitably moot when the plan had become effective, the proceeds of the debtor's asset sale "had been mostly distributed" to creditors, "only the payment of professionals remained as a significant Plan obligation," and "the Bankruptcy Court entered a Final Decree, closing the case and finding the Plan to be fully administered").  Here, the Plan was confirmed and went effective, all distributions under the Plan were made, and the Bankruptcy Court issued the Final Decree closing the case.  Moreover, under the Plan, Centric Brands was to be reorganized into a private company as of the effective date.  Thus, the implementation of Centric Brands's Plan is even farther along than what is required for substantial consummation.

Second, Allen has not met her burden to satisfy the Chateaugay II factors.

Regarding the first three factors—whether the Court can order effective relief that will not affect Centric Brands's re-emergence from bankruptcy or unravel intricate transactions—the Court disagrees with Allen's argument that the Court can grant her effective relief without unwinding the Plan because Centric Brands could reinstate her employment as "alternative equitable relief."  (Doc. #18 at 20).  The Appeal seeks to reverse the Bankruptcy Court's order reducing Claim No. 469 and disallowing Claim No. 1382.  It is irrelevant under Chateauguay II

9

whether post-petition (and post-emergence) employment could be offered to Allen without disturbing the Plan, because that is not the relief she seeks through this Appeal.

Instead, granting Allen the relief sought in the Appeal—by allowing Claim No. 469 in the additional amount of $5,806.77 and Claim No. 1382 in the amount of $2,400,000—would require clawing back either distributions made to hundreds of Centric Brands's priority unsecured creditors or a substantial portion of the $5.8 million pool that was distributed pro rata to over 800 general unsecured claimants nearly a year ago.  In fact, Centric Brands contends "[u]nwinding the consummated transactions and vacating the Claims Order would result in the reinstatement of more than $168 million in general unsecured claims against the Reorganized Debtor." (Doc. #17 at 12).  Thus, granting Allen's requested relief "could cause . . . millions of dollars in previously satisfied claims to spring back to life, thereby potentially requiring the bankruptcy court to reopen the plan of reorganization." In re Windstream Holdings, Inc., 838 F. App'x at 637.  "Moreover, it would likely be highly disruptive for the creditors that received these funds to return them more than a year later." Id.  Thus, Allen has failed to establish that the Court can order effective relief that does not affect Centric Brands's re-emergence from bankruptcy or unravel intricate transactions in a way unmanageable for the Bankruptcy Court.

For similar reasons, Allen has failed to satisfy the fourth Chateauguay II factor:  that the parties who would be adversely affected by her requested relief received notice of the Appeal and an opportunity to participate.  Although Allen filed notice of the Appeal on the Bankruptcy Docket, Allen did not seek a stay of the Claims Order (or any other Bankruptcy Court order) or otherwise inform other creditors of the relief she sought or how it would disrupt distributions already made under the confirmed and effective Plan.

Finally, regarding the fifth factor, Allen fails to demonstrate not only that she acted with diligence, but that she acted at all, to pursue a stay of execution of the Claims Order or any other order that would stay the Bankruptcy Court proceedings implementing the Plan.

Allen argues her diligence is evidenced by how quickly she appealed. However, the diligence inquiry under <u>Chateaugay II</u> focuses on whether a stay was sought with diligence, not whether an appeal was diligently filed. Although Allen contends she "diligently requested adequate stay protection" (Doc. #18 at 13), that assertion is belied by the Bankruptcy Court record. Instead, the record reflects Allen did not seek a stay of the Claims Order, the Memorandum Decision, or any other Bankruptcy Court order.

Finally, Allen's argument that Centric Brands made false or perjurious statements in its motion or the proceedings before the Bankruptcy Court is unavailing. Allen does not support her assertions with any evidence in the record on appeal. To the contrary, the record supports Centric Brands's descriptions of the Chapter 11 proceedings and the Plan's implementation.

Although Allen is correct that the Court has jurisdiction to review the merits of the Appeal, the question presented by Centric Brands's motion is whether it should. <u>See</u> <u>In re Windstream Holdings, Inc.</u>, 838 F. App'x at 637. Here, the Court determines it should not.

Accordingly, it would be inequitable to grant Allen the relief she seeks, and the Appeal is therefore moot.

11

**CONCLUSION**

The motion to dismiss is GRANTED. The Appeal is dismissed as moot.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the pending motion (Doc. #17) and close this case.

Chambers will mail a copy of this Opinion and Order to plaintiff at the address on the docket.

Dated: February 21, 2023
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge